IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| PAMELA ANKRAH,<br><br>**Plaintiff,**<br><br>v.<br><br>FIRST GROUP INVESTMENT, INC., d/b/a DON RAFA BOUTIQUE HOTEL; MULTINATIONAL INSURANCE COMPANY; INSURANCE COMPANY A; JOHN DOE CORPORATIONS 1–5; JOHN DOE INDIVIDUALS 1–5,<br><br>**Defendants**. | **Civil No. 2026cv1109**<br><br>**Personal Injury; Diversity; Jury Trial Demanded** |

## COMPLAINT

**TO THE HONORABLE COURT:**

**COME NOW** Plaintiff PAMELA ANKRAH, through undersigned counsel, for her Complaint against Defendants, respectfully alleges as follows:

### I. JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a), as there is complete diversity of citizenship between Plaintiff and Defendants, and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs.

2. Plaintiff PAMELA ANKRAH is a citizen and domiciliary of the State of New Jersey.

3. Defendant FIRST GROUP INVESTMENT, INC. is a corporation organized and existing under the laws of the Commonwealth of Puerto Rico, with its principal place of business in

Caguas, Puerto Rico, and at all relevant times owned, operated, controlled, managed, and/or maintained the hotel known as Don Rafa Boutique Hotel, located in San Juan, Puerto Rico.

4. Defendant MULTINATIONAL INSURANCE COMPANY is an insurance company authorized to transact insurance business in Puerto Rico, which issued a commercial general liability insurance policy affording coverage to Defendant FIRST GROUP INVESTMENT, INC. for the acts and omissions alleged herein.

5. Defendants INSURANCE COMPANY A and JOHN DOE CORPORATIONS and INDIVIDUALS 1–5 are fictitiously named defendants whose true identities are presently unknown, but who are believed to have insured, owned, operated, managed, maintained, inspected, designed, constructed, repaired, or otherwise exercised control over the premises or conditions at issue. Plaintiff will amend this Complaint when their identities are ascertained.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the events and omissions giving rise to these claims occurred in this District, and Defendants conduct business in Puerto Rico.

## II. PARTIES

7. Plaintiff PAMELA ANKRAH was at all relevant times a lawful guest and business invitee at Don Rafa Boutique Hotel.

8. Defendant FIRST GROUP INVESTMENT, INC. owned, operated, managed, supervised, and controlled the hotel premises, including the pool and pool access areas where Plaintiff was injured.

9. Defendant MULTINATIONAL INSURANCE COMPANY is sued directly pursuant to Puerto Rico's Direct Action Statute, 26 L.P.R.A. § 2003 et seq., and is jointly and severally liable with its insured for the damages caused by the insured's negligent acts and omissions.

### III. FACTUAL ALLEGATIONS

10. On March 19, 2025, at approximately 5:30 p.m., Plaintiff was lawfully present at Don Rafa Boutique Hotel as a paying guest.

11. While exiting the hotel's pool area, Plaintiff proceeded to descend the steps leading out of the pool.

12. The pool steps and surrounding surface were wet, slick, and unreasonably slippery, lacking adequate slip-resistant materials, coatings, or treads, and were not reasonably safe for their intended use.

13. Water was permitted to accumulate on the steps and surrounding tiled surfaces, creating a dangerous condition that was not open and obvious to Plaintiff.

14. At all relevant times, the pool exit steps and surrounding tiled surfaces were finished in dark, black-colored tiles, which materially impaired guests' ability to visually perceive the presence of standing water, moisture, or other slippery conditions. Because of the dark coloration of the tiles, water accumulation on the steps blended into the surface and was effectively camouflaged, rendering the hazardous condition latent and not reasonably observable to hotel guests exercising ordinary care. As a result, Plaintiff could not visually detect the accumulated water before stepping onto the pool exit steps, depriving her of any meaningful opportunity to avoid the danger.

15. Moreover, the black tiles used on the pool steps and surrounding surfaces were unsuitable and unreasonably dangerous for use in a pool or wet-area environment, as they lacked adequate slip resistance when exposed to water. The tile material and finish selected by Defendants had an inherently low coefficient of friction when wet and was not appropriate for a high-moisture, barefoot traffic area such as a pool exit, where guests are expected to traverse the surface while wet. The selection, installation, and continued use of such excessively slippery tile in a pool area constituted

a dangerous condition and a deviation from accepted safety practices, directly and proximately causing Plaintiff's fall and resulting injuries.

16. Defendants failed to provide adequate warnings, signage, non-slip materials, or other safety measures to protect guests from the known hazard.

17. As Plaintiff stepped onto the pool exit steps, her foot suddenly slipped on a clear, slippery substance and/or water accumulated on the tile surface.

18. Plaintiff violently fell, striking her lower back and left side against the edge of the pool steps and surrounding structure.

19. Plaintiff immediately experienced severe pain in her lower back, hip, and other parts of her body and was unable to stand or ambulate.

20. Hotel personnel and management were notified of the incident. At the scene, hotel staff acknowledged and apologized for ongoing issues with the slip resistance of the pool tile and steps.

21. Emergency medical services were summoned. Plaintiff remained on the ground in significant pain until EMS arrived.

22. Plaintiff was transported by ambulance to Ashford Presbyterian Hospital for emergency evaluation and treatment.

23. At no time did Plaintiff engage in careless or reckless conduct. The fall occurred solely as a result of Defendants' failure to maintain the premises in a reasonably safe condition.

24. On March 19, 2025, Plaintiff presented to Ashford Presbyterian Hospital with complaints of severe low back pain and left hip pain following the fall.

25. She was diagnosed with acute traumatic injuries, including injury to the low back, injury to the left hip, and severe muscular spasms.

26. Plaintiff was treated with pain medications and discharged with instructions for follow-up care due to persistent and significant pain.

27. Because of her injuries, Plaintiff was unable to travel as planned and remained largely bedridden for several days.

28. On March 23, 2025, Plaintiff presented to RWJ Barnabas Health, reporting continued severe pain and functional limitations.

29. Diagnostic imaging, including X-rays and CT scans of the pelvis and lumbar spine, revealed an acute, non-displaced fracture of the left L2 transverse process of the lumbar spine.

30. Plaintiff required steroid injections and further pain management and was advised that she could not safely return to work without clearance from a spine specialist.

31. Plaintiff thereafter treated at International Spine and Sports Institute, where she reported debilitating low back pain radiating into the buttocks and lower extremities, with numbness, tingling, weakness, gait instability, and difficulty performing activities of daily living.

32. She was diagnosed with, inter alia:

    a. Acute non-displaced fracture of the left L2 transverse process;

    b. Lumbar radiculopathy, left greater than right;

    c. Severe low back pain;

    d. Sacrococcygeal angulation abnormality;

    e. Bilateral lower-extremity weakness and balance impairment.

33. Plaintiff underwent extensive conservative and interventional pain management, including chiropractic care, physical therapy modalities, electrical stimulation, and therapeutic exercise.

34. MRI studies revealed additional traumatic findings, including lumbar disc bulging, cervical disc bulges and herniation with annular tear, spinal canal and foraminal stenosis, thoracic disc bulging, and a partial rotator cuff tear of the left shoulder.

35. Plaintiff developed persistent neck pain, mid-back pain, and left shoulder pain as a direct result of the fall.

36. Plaintiff underwent comprehensive neurological and traumatic brain injury testing, which revealed abnormal findings consistent with traumatic brain injury, including deficits in sensory integration, cognitive processing, oculomotor coordination, balance, and increased fall risk.

37. Additional testing demonstrated concussion-related abnormalities, including impaired eye movements, reduced smell function, and electrical abnormalities in brain activity.

38. Plaintiff continues to suffer headaches, dizziness, cognitive difficulties, and neurological symptoms attributable to the traumatic brain injury sustained in the fall.

39. Plaintiff developed progressive and severe left knee pain following the accident, with imaging revealing joint effusion and an osteochondral defect of the patella with associated bone marrow edema.

40. Plaintiff was diagnosed with traumatic chondral damage to the left knee, resulting in antalgic gait, pain with ambulation, stairs, squatting, and daily activities.

41. Due to the failure of conservative treatment, Plaintiff underwent surgical intervention, including arthroscopy, abrasion chondroplasty of the patella, synovectomy, and related procedures.

42. Plaintiff underwent multiple invasive spine procedures, including medial branch blocks, radiofrequency ablation at multiple lumbar levels, sacroiliac joint injections, and transverse process injections.

43. These procedures were medically necessary to address chronic pain caused by traumatic spinal injuries from the fall.

44. Plaintiff's treatment remains ongoing.

45. She continues to experience chronic pain, neurological symptoms, physical limitations, and reduced quality of life.

**46.** Plaintiff has sustained permanent injuries and will require future medical care, monitoring, and possible additional interventions.

**47.** As a direct and proximate result of Defendants' negligence, Plaintiff has incurred medical expenses in excess of $435,000, exclusive of future care.

**48.** Plaintiff has suffered lost wages and employment interruption, including a medically necessary leave of absence and short-term disability.

**49.** Plaintiff has endured and continues to endure severe physical pain, mental anguish, emotional distress, loss of enjoyment of life, and inconvenience.

**50.** Plaintiff has sustained permanent physical impairment and disability.

## VI. CAUSES OF ACTION

### COUNT I – NEGLIGENCE (Against Hotel Defendants)

**51.** Plaintiffs repeats and realleges all of the preceding paragraphs as if fully set forth herein.

**52.** Defendants owed Plaintiff a duty to maintain the premises in a reasonably safe condition.

**53.** Defendants breached that duty by allowing a dangerous and slippery condition to exist on the pool steps and surrounding area, failing to remedy it, and failing to warn guests.

**54.** Defendants knew or should have known of the hazardous condition through reasonable inspection and maintenance.

**55.** Defendants' negligence was the direct and proximate cause of Plaintiff's injuries and damages.

### COUNT II – PREMISES LIABILITY (Against Hotel Defendants)

**56.** Plaintiffs repeats and realleges all of the preceding paragraphs as if fully set forth herein.

**57.** Plaintiff was a lawful business invitee.

**58.** The dangerous condition posed an unreasonable risk of harm.

**59.** Defendants failed to correct the condition or provide adequate warnings.

**60.** Plaintiff's injuries were a foreseeable result of Defendants' failure to maintain safe premises.

## COUNT III – DIRECT ACTION AGAINST INSURER (Against MULTINATIONAL INSURANCE COMPANY)

**61.** Defendant MULTINATIONAL INSURANCE COMPANY issued a liability policy covering the acts and omissions of the hotel.

**62.** Pursuant to 26 L.P.R.A. § 2003, Plaintiff is entitled to bring a direct action against the insurer.

**63.** The insurer is jointly and severally liable for the damages caused by its insured.

## VII. JURY DEMAND

Plaintiff hereby demands trial by jury on all issues triable by jury.

**WHEREFORE**, Plaintiff respectfully requests that judgment be entered in her favor and against Defendants, jointly and severally, awarding:

a. Compensatory damages in an amount to be determined at trial;

b. Past and future medical expenses;

c. Lost wages and loss of earning capacity;

d. Damages for pain and suffering and emotional distress;

e. Costs, interest, and any other relief deemed just and proper; and

f. Trial by jury on all issues so triable.

**RESPECTFULLY SUBMITTED.**

San Juan, Puerto Rico, this 24th day of February, 2026.

s/ Alberto J. Castañer-Padró
Alberto J. Castañer-Padró
USDC 225706
**Castañer & Baella PSC**
MAI Center
771 Calle 1, Ste 204
San Juan PR 00920
Fax 1 888 227 5728
Tel 787 707 0802
alberto@castanerlaw.com